IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CALEB HARVARD,

    Plaintiff,

      v.

SIG SAUER, INC.,

    Defendant.

CIVIL ACTION FILE
NO. 1:25-CV-6891-TWT

**OPINION AND ORDER**

This is a products liability action. It is before the Court on Defendant

Sig Sauer, Inc.'s Partial Motion to Dismiss [Doc. 10]. For the reasons stated

below, Defendant Sig Sauer's Partial Motion to Dismiss [Doc. 10] is DENIED.

## I.    Background[1]

This is a firearm design defect case. The Sig Sauer P365X pistol is a

striker-fired pistol, which uses an internal, spring-loaded firing pin to hit the

primer and fire the cartridge instead of an external hammer like a traditional

gun. (*See* Am. Compl. ¶¶ 7, 19 [Doc. 8]). When the slide is racked back and

released forward to chamber a round, the firing pin remains back and under

spring tension, making it ready to fire. (*Id.* ¶ 19). The firearm did not feature

a manual safety. (*See id.* ¶ 8). Nonetheless, the Defendant designed,

---

[1] The Court accepts the facts as alleged in the Amended Complaint as true for purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941 F.3d 1116, 1122 (11th Cir. 2019).

manufactured, and sold the firearm and advertised it as a firearm that was equipped with the necessary features to prevent unintentional discharges. (*Id.* ¶ 19).

The Plaintiff is an individual who purchased a Sig Sauer P365X on November 18, 2023. (*Id.* ¶ 6). A month later, the Plaintiff was at the Rock Bottom Hunting Club in Roberta, Georgia with the firearm in his possession. (*Id.* ¶¶ 9-10). The firearm was fully seated and properly secured in a holster, which was attached to the Plaintiff's belt on his waistband. (*Id.* ¶ 10). At some point, the Plaintiff proceeded to remove the holster, with the firearm inside it from his waistband, using his left hand to relieve the tension from the holster clip. (*Id.* ¶¶ 11-12). The Plaintiff held the holster with his right hand, with his hand positioned over the muzzle end of the holster. (*Id.* ¶ 13). After the holster was removed and while the Plaintiff was holding it, the firearm suddenly discharged without the Plaintiff touching the trigger or taking any action to cause it to discharge. (*Id.* ¶ 14). The firearm remained fully seated inside the holster at the time of discharge. (*Id.* ¶ 15). Additionally, the shell casing did not eject from the firearm during the time of discharge, remaining in the chamber. (*Id.* ¶ 17). The discharge caused severe and permanent injury to the Plaintiff's right index finger near the middle joint. (*Id.* ¶ 16). Despite having knowledge of incidents like the one suffered by the Plaintiff at the time of the injury, the Defendant continued to make the firearm available for purchase

without a manual safety and never issued a mandatory recall of the firearm. (*See id.* ¶¶ 22-24).

After these events, the Plaintiff filed suit with this Court, seeking damages for his injuries under product liability and negligence theories. (*See generally* Compl. [Doc. 1]). In response, the Defendant filed this Partial Motion to Dismiss. (*See generally* Def.'s Partial Mot. to Dismiss [Doc. 10]).

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994-95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753

3

F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

### III.    Discussion

The Amended Complaint contains four counts. Count I asserts a strict product liability claim under a design defect theory. (*See* Am. Compl. ¶¶ 26-33). Count II asserts a strict product liability claim under a failure to warn theory. (*See id.* ¶¶ 34-37). Count III asserts a negligence claim against the Defendant. (*See id.* ¶¶ 38-43). Finally, Count IV asserts a claim for punitive damages. (*See id.* ¶¶ 44-48). In its Partial Motion to Dismiss under Rule 12(b)(6), the Defendant only seeks to dismiss Counts I and III of the Amended Complaint. It argues, that the text of the Second Amendment of the United States Constitution bars the Plaintiff's design defect claims. (Br. in Supp. of Def.'s Partial Mot. to Dismiss, at 6 [Doc. 10]). This is because the Defendant likens the claims to a de facto ban on all striker-fired pistols that lack external manual safeties. (*Id.*).

The Second Amendment states: "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Second Amendment has been incorporated against the States under the Fourteenth

Amendment. *McDonald v. City of Chicago, Ill.*, 561 U.S. 742, 778 (2010); *see also* U.S. Const. amend. XIV.

The Defendant's argument is a novel one; it relies on the United States Supreme Court's decision in *New York State Rifle & Postol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022), to argue that recognizing the lack of an external safety as a design defect in the Sig Sauer P365X would amount to judicially creating firearm regulations that would run afoul of the Second Amendment. (*See* Br. in Supp. of Def.'s Partial Mot. to Dismiss, at 6-7). Indeed, under *Bruen*, the Supreme Court held that "when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct" and that "[o]nly if a firearm regulation is consistent with this Nation's historical traditional may a court conclude that the individual's conduct falls outside the Second Amendment's 'unqualified command.'" *Bruen*, 597 U.S. at 17 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 (1961)). In making theses

But the Plaintiff fundamentally disagrees with the Defendant's interpretation of the Amended Complaint. He asserts that the Amended Complaint's design defect allegations do not impose a blanket requirement that all pistols require an external safety, but rather the design defect is unique and limited to the Sig Sauer P365X because of the internal mechanical design that makes it prone to spontaneous discharges without a trigger pull.

5

(*See* Pl.'s Resp. to Def.'s Partial Mot. to Dismiss, at 4-5 [Doc. 19]). The Plaintiff also argues that, even if the design defect does impose a firearm regulation, that Congress has recognized that design defect lawsuits are permitted under the Second Amendment through the Protection of Lawful Commerce in Arms Act (the "PLCAA") enacted in 2005. (*See id.* at 6-7). While he acknowledges that a statute does not override the requirements of the Constitution, the Plaintiff nonetheless argues that "[i]f Congress had believed that design defect liability for firearms was constitutionally foreclosed, it would not have preserved that category of claims." (*Id.* at 7).

The Court must determine whether the Plaintiff's design defect claims, and any subsequent decision by this Court, could infringe on the fundamental right to bear arms enshrined within the Second Amendment. *See Bruen*, 597 U.S. at 17 ("[W]e hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."); *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 (1964) (holding, in the context of the Fourteenth Amendment, that a rule of decision imposed by a court based on state or common law in a private action is reviewable for constitutionality). After all, the Plaintiff's suit is not a firearm regulation imposed by the government. However, Georgia courts have acknowledged that, in order to resolve a design defect case, "the court is called upon to supply the standard for defectiveness." *Brazil v. Janssen Rsch. & Dev. LLC*, 196 F. Supp.

6

3d 1351, 1359 (N.D. Ga. 2016) (quoting *Banks v. ICI Americas, Inc.*, 264 Ga. 732, 733-34 (1994)). Because the answer is not apparent like in most other Second Amendment cases, the Court addresses it herein.

The Court first addresses the standard imposed by Georgia courts when considering design defect cases. "By statute, Georgia 'imposes strict liability [on manufacturers] for defective products.'" *Maynard v. Snapchat, Inc.*, 313 Ga. 533, 536 (2022) (citations omitted). Under this statute, "a manufacturer who sells a product has a duty to ensure that the product it sells does not have a design defect." *Id.* (citation omitted). "Because a manufacturer may owe a design duty under Georgia's product-liability statute or under this State's decisional law, a plaintiff injured by a defectively designed product can pursue a claim against a manufacturer under either a statutory strict-liability theory or a decisional-law negligence theory or both." *Id.* at 537. No matter the theory of recovery, "the factfinder performs a 'risk-utility analysis,' assessing 'the reasonableness of choosing from among various alternative product designs' by asking whether 'the risk of harm outweighs the utility of a particular design' to determine whether 'the product is not as safe as it should be.'" *Id.* at 537-38 (citation omitted). "In addition to proving that a product was defectively designed, a plaintiff seeking to hold a manufacturer liable for a design defect must show that the defect proximately caused the plaintiff's injury." *Id.* at 538. Ultimately, the question of whether a manufacturer breached its design duty

7

"turns on whether it 'failed to adopt a reasonable, safer design that would have reduced the foreseeable risks of harm presented by the product.'" *Id.* at 540 (citation omitted).

Determining whether a plaintiff has sufficiently pled a design defect is not straightforward. As one court in this district put it, "'a 'design defect' is a far more diffuse proposition under Georgia Supreme Court precedent, as the latter calls for the finder of fact to employ a loose balancing test to determine whether the manufacturer properly designed the product.'" *Brazil*, 196 F. Supp. 3d at 1359 (quoting *Jones v. Amazing Prods, Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002)). This is not to say that anything goes. In *Brazil*, the court held that the plaintiff failed to plead a design defect because: (1) she only described how the product worked without describing the defect, (2) the court could not reasonably infer from this description the mechanism of action that was defective or unreasonably dangerous, and (3) the complaint provided no notice to the defendants of what the alleged wrongdoing is. *Id.* On the other hand, the Georgia Supreme Court in *Maynard* found that the plaintiffs sufficiently pled their design defect claims because, under the pleadings, the defendant: (1) could reasonably see the danger of its product's design, (2) purposefully designed its product to encourage behavior that could lead to injury, (3) had knowledge of at least one other individual injured by its product, and (4) could have resolved the design defect before the injury. *See Maynard*,

8

313 Ga. at 540-41.

Under this background of Georgia law, the Defendant argues that the Plaintiff's design defect claims amount to a de facto ban of purchasing handguns  without an external safety, which runs antithetical to the Second Amendment. (*See* Br. in Supp of Def.'s Partial Mot. to Dismiss, at 6, 15-16). It argues that, because the claim arises out of Georgia law and judicial action is necessary to determine what constitutes a defect, the Plaintiff's claims infringe upon the Second Amendment because they would impose liability for a lack of having an external safety. (*See id.* (citing *Oakland Tactical Supply v. Howell Twp., Mich.*, 103 F.4th 1186, 1198 (6th Cir. 2024), then citing *Gazzola v. Hochul*, 88 F.4th 186, 195 (2d Cir. 2023)); *see also Sullivan*, 376 U.S. at 265. The Court does not draw this same conclusion based on the allegations of the Amended Complaint.

As an initial matter, the Plaintiff does not assert that the defect encompasses all handguns and only limits its discussion to the Sig Sauer P365X as sold. Thus, this is not an attempt to impose an external manual safety requirement on all handguns as the Defendant asserts. Next, in the relevant section of the Amended Complaint, the Plaintiff asserts that there is a design defect within the firearm arising from internal defective components and that the Defendant was on notice of this defect. (*See* Am. Compl. ¶ 21). It is this defect that caused the firearm to spontaneously discharge and cause the

Plaintiff's injury. (*See id.* ¶¶ 21, 23, 25). It is only later that the Plaintiff suggests that the addition of an external safety could have significantly reduced the risk of misfire from defective components. (*See id.* ¶ 23). This paragraph was likely included to demonstrate, at the pleading stage, that a "reasonable, safer design" could have been adopted by the Defendant to reduce the risk of misfires arising from internal defects. *See Maynard*, 313 Ga. at 540. There is little indication within the Amended Complaint that the Plaintiff considers the lack of an external manual safety the defective part of the Gun, especially when the Plaintiff emphasizes that the Defendant marketed the firearm as one with the necessary internal features to prevent unintentional discharges. (*See* Am. Compl. ¶ 23). Taking that emphasis into account, the external manual safety addition discussed within the Amended Complaint does not appear to be the defective element of the firearm.

This reading of the Amended Complaint is further bolstered by the courts' analysis in *Brazil* and *Maynard*. In both cases, the issue was before the courts on motions to dismiss for failure to state a claim. *See Maynard*, 313 Ga. at 535; *Brazil*, 196 F. Supp. 3d at 1356. Both courts focused on whether the pleadings demonstrated that the actual product had a defective design and paid little consideration to potential safer design alternatives. *See Maynard*, 313 Ga. at 540-41; *Brazil*, 196 F. Supp. 3d at 1359. It would follow that, if proposing a safer design was dispositive at the pleading stage so as to require

judicial action, that either case would note the characteristic of the complaint within their analyses. They do not, bolstering the conclusion that pleading a safer design does not tie the Plaintiff down to only that theory upon factual discovery.

But this discussion does not foreclose the Defendant from raising its Second Amendment argument at a later stage of the litigation. After discovery, if it becomes clear that there are no internal design defects present within the firearm, then the only design defect that could be construed from the Amended Complaint would be the lack of an external manual safety. And, in that case, the Defendant *might* plausibly assert that the Plaintiff's design defect claims infringe on the Second Amendment. This is because, if the Plaintiff prevails, then judicial action could reasonably be interpreted to impose liability on all manufacturers that produce guns similar to the P365X. In any case, the Court will not endeavor to analyze the issue at this time.

Ultimately, based on the pleadings of the Amended Complaint, the Court concludes that the Plaintiff's design defect claims do not invoke Second Amendment protections because any judicial action by this Court will not constitute a de facto ban of a certain class of weapons. Accordingly, the Court will not dismiss any claims from the Amended Complaint. Thus, it is not necessary to address the Plaintiff's novel claim that defective firearms are not "arms" within the scope of the Second Amendment.

11

## IV.    Conclusion

For the foregoing reasons, Defendant Sig Sauer's Partial Motion to Dismiss [Doc. 10] is DENIED.

SO ORDERED, this ____7th____ day of August, 2026.

THOMAS W. THRASH, JR.
United States District Judge

12